UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MC ATLANTIC, INC.,** | CIVIL ACTION NO: |
| **Plaintiff,** | SECTION "___"; DIVISION "___" |
| vs. | JUDGE |
| **CAPE DALY SHIPPING CO. LTD.,** *in personam*, **and M/T CAPE DALY (IMO NO. 9449431), Her Engines, Boilers, Tackle, Furniture, Apparel, Appurtenances, etc.,** *in rem*, | MAGISTRATE |
| **Defendants.** | |

## VERIFIED COMPLAINT

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA:**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, MC Atlantic, Inc. ("MCA"), and for its Verified Complaint against Defendants, Cape Daly Shipping Co. Ltd. ("Shipping"), *in personam*, and M/T CAPE DALY (IMO No. 9449431) (the "Vessel"), *in rem*, and allege as follows:

## THE PARTIES

1.

Plaintiff MCA is a corporation duly organized and existing under the laws of Florida with its principal place of business at 777 Brickell Ave, Suite 500, Miami, Florida 33131.

2.

*In personam* Defendant Shipping is a foreign corporation, or other business entity duly organized under foreign law, with a principal place of business at Trust Company Complex,

Ajetake Road, Ajetake Island, Mujuro, MH 96960, Marshall Islands and was at all times relevant herein the registered owner of the *in rem* Defendant Vessel, a 2010-built, Marshall Islands-flagged chemical/oil products tanker bearing IMO No. 9449431.

## JURISDICTION AND VENUE

3.

This Court has jurisdiction over the subject matter of this action pursuant to Rule 9(h) of the Federal Rules of Civil Procedure because it arises from the breach of a maritime contract. This action also comes within the Court's admiralty and maritime jurisdiction pursuant to U.S. Constitution Article 3, Section 2 and 28 U.S.C. § 1333 and is brought pursuant to Rules B and C of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions because MCA seeks the attachment and arrest of the *in rem* Defendant Vessel as security for its claim.

4.

Venue is proper in this Honorable Court because the *in rem* Defendant Vessel presently is situated within the waters of this District.

## FACTS AND CLAIM

5.

In February 2016, MCA and Shipping entered into a voyage charter party, whereby MCA chartered the Vessel from Shipping to carry 6,500 metric tons (+/- 2% shipping tolerance) of molasses from Puerto Cabello, Venezuela to Chaguaramas, Trinidad (the "Charter"). The laycan period was said to be February 19, 2016 to March 5, 2016. A copy of the Clean Fixture Recap dated February 10, 2016, as well as the charter party terms, is attached as Exhibit A hereto.

6.

Pursuant to the Charter, the freight MCA was to pay was $46.50 per metric ton, and MCA was required to pay 50% of the freight when Shipping lifted subjects prior to loading, and the balance was to be paid before breaking bulk, *i.e.*, before discharge.  Accordingly, prior to the subject voyage, MCA made the initial freight payment of $154,147.50 to Shipping, this figure being 50% of the freight had MCA shipped the maximum quantity allowed under the Charter.

7.

Upon information and belief, the Vessel's prior fixture similarly involved the export of molasses from Venezuela to another foreign port, but problems caused by Shipping and its prior charterer in that instance who were attempting to export molasses without the required documentation resulted in the Venezuelan governmental authorities stopping that shipment, which delayed the vessel, and further placed a partial blockage nationwide on all molasses products.

8.

In light of the above, on February 24, 2016 several days into the laycan period under the Charter, MCA received word from a representative of the Vessel and Shipping through the ship broker that "according to Custom Office & SUNAGRO (Government institute) molasses cargo is not authorized to export by *any Company*."  *See* Exhibit B (emphasis added).

9.

Therefore, MCA, which was at all times prepared to export the subject molasses cargo, was forced to cancel the Charter as a result of the Venezuelan government's embargo.

10.

On March 15, 2016, with Shipping still not having returned MCA's $154,147.50 freight deposit under the aborted Charter, MCA was once again able to export its molasses cargo and

3

approached Shipping with the prospect of using the Vessel for this voyage proposed as the last week of March or the beginning of April. *See* Exhibit C.

11.

Nevertheless, on March 21, 2016, MCA was informed through the ship broker that Shipping was not interested in MCA's proposal which would have allowed Shipping to keep MCA's $154,147.50 freight deposit and earn the balance that would have been due under this voyage. Accordingly, MCA requested the return of its freight deposit for the voyage that Shipping did not fulfill and therefore did not earn. *See* Exhibit D.

12.

To date, Shipping has wrongfully refused to return MCA's freight deposit even though the subject Charter was never fulfilled, partly because of Shipping's attempt with its prior charterer to illegally export molasses from Venezuela.

13.

On March 28, 2016, MCA informed Shipping via letter that the latter's wrongful refusal to return MCA's freight deposit, MCA was unable to contract another ship, which has in turn may result in the cancellation of MCA's underlying contract to provide the subject molasses cargo to Trinidad Distilleries, thus causing further commercial damages which have yet to be quantified. *See* Exhibit E.

### FIRST CAUSE OF ACTION: BREACH OF CHARTER

14.

MCA repeats and re-alleges paragraphs 1 through 13 set out hereinabove as though the same were more thoroughly set forth at length herein.

4

15.

Although MCA was at all times prepared to export cargo, the attempt by Shipping and its prior charterer to illegally export molasses from Venezuela resulted in MCA and Shipping being forbidden by the Venezuelan government to export its cargo during the contractual laycan period.

16.

Further, although Shipping, itself, was partially responsible for the Venezuelan government's temporary ban on the export molasses cargoes, which in turn frustrated the parties' ability to fulfill the Charter calling for the export of a molasses cargo from Venezuela, Shipping has wrongfully refused to return MCA's $154,147.50 freight deposit which Shipping did not earn.

17.

Shipping's wrongful refusal to return MCA's freight deposit even though it did not transport the subject molasses cargo constitutes a breach of the Charter for which Shipping is liable to MCA in the principal amount of $154,147.50.

18.

In addition, Shipping's wrongful refusal to return MCA's freight deposit under the unfulfilled Charter has hindered MCA's effort to contract another ship to complete the voyage that should have been completed by the Vessel.  This in turn may result in the cancellation of MCA's underlying contract to provide the subject molasses cargo to Trinidad Distilleries, thus causing further commercial damages which have yet to be quantified.

## SECOND CAUSE OF ACTION: UNJUST ENRICHMENT

19.

MCA repeats and re-alleges paragraphs 1 through 18 set out hereinabove as though the same were more thoroughly set forth at length herein.

20.

MCA has paid Shipping $154,147.50 in freight to transport the subject molasses cargo as envisaged under the Charter, which Shipping has not done.

21.

In light of the above that Shipping has been unjustly enriched in the amount of $154,147.50 in keeping freight that was paid but not earned, and Shipping is liable to MCA in that same amount.

## ARBITRATION

22.

MCA repeats and re-alleges paragraphs 1 through 21 set out hereinabove as though the same were more thoroughly set forth at length herein.

22.

Pursuant to the Charter, "[a]ny and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration" in London under English Law.  *See* Exhibit A.

23.

In accordance with 9 U.S.C. § 8, MCA is entitled to obtain security for its claims described herein by way of a maritime arrest and maritime attachment as more fully set forth below. Plaintiff reserves the right to arbitrate the merits of the dispute.

**SUPPLEMENTAL RULE B AND C RELIEF**

24.

MCA repeats and re-alleges paragraphs 1 through 23 set out hereinabove as though the same were more thoroughly set forth at length herein.

25.

The Charter is a maritime contract, the breach of which by Shipping attaches a maritime lien on the Vessel that is enforceable by a suit *in rem*. Accordingly, MCA seeks to enforce its maritime lien pursuant to a Warrant of Arrest to be issued against the Vessel, all in accordance with Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions and Local Admiralty Rule 4.1(B) by way of an arrest of the Vessel.

26.

Plaintiff also seeks jurisdiction over the *in personam* Defendant Shipping, who cannot be found within this District and is believed to have assets in this jurisdiction, namely the Vessel, by attachment of Shipping's goods and chattels within this District and within the state of Louisiana pursuant to a Writ of Foreign Attachment to be issued against the Vessel, requiring Shipping to answer the allegations detailed above and to provide security for MCA's claims, all in accordance with Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions and Local Admiralty Rule 4.1(A)

**WHEREFORE**, MC Atlantic, Inc. prays that:

1.  Its Verified Complaint be deemed good and sufficient;

2.  Process in due form of law be issued pursuant to Rules B and C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure, directing the *in personam* Defendant Cape Daly Shipping Co. Ltd. to appear and answer, all and singular,

the allegations contained herein and directing that the M/T CAPE DALY, presently lying afloat on the navigable waters of the United States of America within this District and the jurisdictional limits of this Court, be attached and arrested in the proceeding to the amount of Plaintiff's claims stated herein, plus interest, costs, and attorney's fees;

3. All parties claiming an interest, title or right in the said vessel appear and answer, all and singular, the allegations of this Verified Complaint;

4. After due proceedings, Plaintiff have judgment against Defendants, the M/T CAPE DALY, her engines, boilers, tackle, furniture, apparel, appurtenances, etc., *in rem,* and Cape Daly Shipping Co. Ltd., *in personam,* in the full amount of Plaintiff's damages which are presently estimated to be no less than $154,147.50, and further interest thereon at the legal rate, and for any other and further amount that later calculation may demonstrate as being appropriate;

5. This Honorable Court enter a decree in favor of the Plaintiff and against Defendants for the total amount of Plaintiff's damages and that the M/T CAPE DALY be condemned and sold for the aforesaid amount together with reasonable costs and attorney's fees, including the costs and attorney's fees incurred herein;

6. Plaintiff have such other and further relief as the law and justice may require; and

7. Plaintiff agrees to release and hold harmless, and indemnify the United States of America, the United States Marshals Service, their agents, servants, employees, and all others for whom they are responsible, from any and all liability or responsibility for claims arising from the arrest or attachment of the vessel.

Respectfully submitted,

*/s/ T. Patrick O'Leary*
Andrew S. de Klerk (LA 1045), T.A.
T. Patrick O'Leary (LA 30655)
Brandon K. Thibodeaux (LA 32725)
**FRILOT L.L.C.**
3700 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-3700
Phone: 504.599.8004
Fax: 504.599.8114
mclements@frilot.com
poleary@frilot.com
bthibodeaux@frilot.com
**Counsel for Plaintiff,
MC Atlantic, Inc.**

**INSTRUCTIONS FOR U.S. MARSHALS SERVICE:**

PLEASE SERVE THE WARRANT OF ARREST /
WRIT OF FOREIGN ATTACHMENT
AND ARREST/ATTACH THE M/T CAPE DALY
LYING AFLOAT IN THE MISSSISSIPPI RIVER
AT LOWER KENNER BEND ANCHORAGE
ABOUT MILE 113 AHP.